**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ROBERT LEROY RACEL, JR.,

      Plaintiff,

v.                                                                            Case No. 3:20-cv-795-JRK

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security,[1]

      Defendant.
_____

## **OPINION AND ORDER**[2]

### I.   Status

    Robert Leroy Racel, Jr. ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claim for supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of bipolar disorder, manic depression, insomnia, anxiety, seizures, post-traumatic stress disorder ("PTSD"), agoraphobia, and emphysema. See

---

    [1]    Kilolo Kijakazi recently became the Acting Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    [2]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 22), filed June 14, 2021; Reference Order (Doc. No. 23), entered June 15, 2021.

Transcript of Administrative Proceedings (Doc. No. 15; "Tr." or "administrative transcript"), filed March 10, 2021, at 60, 76, 237. Plaintiff filed an application for SSI on June 28, 2016, alleging a disability onset date of January 16, 2014. Tr. at 195-203.[3] The application was denied initially, Tr. at 59-73, 74, 133, 134-36, and upon reconsideration, Tr. at 75-86, 87, 109, 110-14.

On June 4, 2019, an Administrative Law Judge ("ALJ") held a hearing, during which she heard testimony from Plaintiff, who was represented by counsel; Plaintiff's girlfriend; and a vocational expert ("VE"). See Tr. at 34-58. Plaintiff was fifty-six years old at the time of the hearing. Tr. at 39. On August 15, 2019, the ALJ issued a Decision finding Plaintiff not disabled since the date the application was filed.[4] See Tr. at 15-28.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council. See Tr. at 4-5 (Appeals Council exhibit list and order), 193-94. On May 13, 2020, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On

---

[3] Although actually completed on June 28, 2016, see Tr. at 195, the protective filing date of the application is listed elsewhere in the administrative transcript as April 30, 2016, see, e.g., Tr. at 60, 76.

[4] The administrative transcript also contains a decision of an ALJ dated January 15, 2014 that adjudicated prior filed claims for SSI and disability insurance benefits ("DIB"). Tr. at 91-101. The parties make nothing of this decision, other than Plaintiff noting its existence in describing the background, and it obviously does not pertain to the application at issue here, which was filed after the January 2014 decision.

July 16, 2020, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues the ALJ: 1) "improperly discounted the report of [a] consulting psychologist and thereby failed to recognize Plaintiff's disability due to a listings criteria"; 2) "failed to apply the guidance of Social Security Rulings 85-15 and 85-16"; and 3) failed to "comprehensibly describe[] Plaintiff's functional capacity resulting from his combination of impairments" in the hypothetical to the VE.[5] Pl.'s Mem. at 1[6] (emphasis and capitalization omitted); see Pl.'s Mem. at 12-15 (argument regarding issue one), 15-17 (argument regarding issue two), 17-18 (argument regarding issue three).[7] On August 10, 2021, Defendant filed a Memorandum in Support of the

---

[5] Plaintiff also contends that "he has been unable to sustain employment and that he is also disabled by the combined effect of his multiple severe impairments," Memorandum in Support of Plaintiff's Position (Doc. No. 19; "Plaintiff's Memorandum" or "Pl.'s Mem."), filed June 8, 2021, at 6 (citing SSR 96-8p), but he does not argue any points of legal error on the part of the ALJ to support this statement.

[6] As Plaintiff's Memorandum contains unnumbered pages, citations to it follow the pagination assigned by the Court's electronic filing system (CM/ECF).

[7] Plaintiff filed a "Motion to Submit and Notice of Published Decision" (Doc. No. 20; "Motion") on June 10, 2021 in further support of his memorandum. In the Motion, Plaintiff advises the Court of an opinion by the United States Court of Appeals for the Eleventh Circuit that was issued on June 9, 2021: Simon v. Comm'r, Soc. Sec. Admin., 1 F.4th 908 (11th Cir. 2021), withdrawn and superseded, 7 F.4th 1094 (11th Cir. Aug. 12, 2021). The Motion is granted to the extent that the Court has considered the controlling Simon opinion (issued on August 12, 2021). In the future, Plaintiff's counsel shall ensure that any notices of supplemental authority comply with Rule 3.01(i), Local Rules, Middle District of Florida.

Commissioner's Decision (Doc. No. 25; "Def.'s Mem.") addressing Plaintiff's arguments.

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for reconsideration of the consultative psychologist's opinion (part of Plaintiff's first argument). On remand, a re-evaluation of this opinion may impact all of the other arguments made by Plaintiff in this appeal, including whether Plaintiff meets or medically equals a listing (the remainder of Plaintiff's first argument). For this reason, the Court need not address the remaining arguments. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II.   The ALJ's Decision

When determining whether an individual is disabled,[8] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal

---

[8]  "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

(Continued…)

Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon, 7 F.4th at 1101-02 (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 17-27. At step one, the ALJ determined Plaintiff "has not engaged in substantial gainful activity since April 30, 2016, the application date."[9] Tr. at 17 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: history of a seizure disorder, emphysema/COPD, bipolar disorder with depression and anxiety, and PTSD." Tr. at 17 (emphasis

---

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[9] SSI is not payable prior to the month following the month in which the application was filed. See 20 C.F.R. § 416.335. The ALJ noted this but stated she nevertheless "considered the complete medical history consistent with 20 [C.F.R. §] 416.912." Tr. at 15; see also Tr. at 20-21 (discussing medical evidence pre-dating the application filing date).

- 5 -

and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 17 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform a full range of work at all exertional levels but with the following nonexertional limitations: he cannot climb ropes, ladders and scaffolds. He can have no exposure to hazards. He must avoid concentrated exposure to humidity, wetness, extreme hot and extreme cold, and pulmonary irritants. He is limited to simple, routine and repetitive tasks and simple decision-making. He can manage an average production rate pace or quota but nothing that is fast paced. He needs a static work environment with infrequent changes in work tasks. He cannot engage in conflict resolution, arbitration or negotiation. He can have occasional contact with supervisors and coworkers and infrequent and superficial contact with the public.

Tr. at 19 (emphasis omitted).

At step four, the ALJ found that Plaintiff "has no past relevant work." Tr. at 26 (emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("53 years old . . . on the date the application was filed"), education ("at least a high school education"), work experience, and RFC, Tr. at 26 (emphasis and citation omitted), the ALJ relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as "Floor Waxer," "Salvage Laborer," and "Auto Detailer," Tr. at 27 (some

emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . since April 30, 2016, the date the application was filed." Tr. at 27 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is

supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff contends the ALJ erred in discounting the opinion of examining psychologist Darrin J. Kirkendall, Ph.D., causing the ALJ to err at step three in determining that Plaintiff did not meet or medically equal a listing. Pl.'s Mem. at 12-15. In making his argument, Plaintiff criticizes the ALJ's reliance on Plaintiff's purported stability on medications, see id. at 14, and argues the ALJ ignored that Dr. Kirkendall's report is consistent with his medical providers' records, see id. at 13. Plaintiff asserts that had the ALJ accepted Dr. Kirkendall's report, Plaintiff could have been found to have met either Listing 12.04 (addressing depression, bipolar, and related disorders) or Listing 12.06 (addressing anxiety). Id. at 12-13. Responding, Defendant contends that the ALJ properly weighed Dr. Kirkendall's opinion because it is inconsistent with the other evidence. Def.'s Mem. at 6-8.

At step three, the burden rests on the claimant to prove the existence of a Listing-level impairment. Goode v. Comm'r of Soc. Sec., 966 F.3d 1277, 1278 (11th Cir. 2020); Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). Mere diagnosis of a listed impairment is not sufficient. See, e.g., Carnes, 936 F.2d at 1218; see also Wilson v. Barnhart, 284 F.3d 1219, 1224 (sch11th Cir. 2002). "To

meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Wilson, 284 F.3d at 1224 (internal quotations and citations omitted). "To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings." Id. (internal quotations and citations omitted).

"Medical opinions[10] are statements from [physicians or other] acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Acceptable medical sources include licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1502(a).[11]

---

[10] On January 18, 2017, the SSA revised the Rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Because Plaintiff filed his claim before that date, the undersigned cites the Rules and Regulations that are applicable to the date the claim was filed.

[11] For claims filed on or after March 27, 2017, acceptable medical sources also include licensed audiologists, licensed Advanced Practice Registered Nurses, and licensed Physician Assistants. 20 C.F.R. § 404.1502(a)(6)-(8).

The Regulations establish a hierarchy among medical opinions that provides a framework for determining the weight afforded each medical opinion. See 20 C.F.R. § 404.1527. Essentially, "the opinions of a treating physician are entitled to more weight than those of a consulting or evaluating health professional," and "[m]ore weight is given to the medical opinion of a source who examined the claimant than one who has not." Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019). Further, "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence." Id. at 1260 (citing Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)).

The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. § 404.1527(c)(2)-(5); see also 20 C.F.R. § 404.1527(f); Walker v. Soc. Sec. Admin., Comm'r, 987 F.3d 1333, 1338 (11th Cir. 2021) (citation omitted); McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citation omitted) (stating that "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given

more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists").

An ALJ is required to consider every medical opinion. See 20 C.F.R. § 404.1527(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. § 404.1527(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz, 825 F.2d at 279); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

The Eleventh Circuit has recognized that "the episodic nature of" bipolar disorder must be considered by an ALJ.   Schink, 935 F.3d at 1268. An ALJ may not rely on "snapshots" of how a bipolar individual is doing to discredit medical findings because the disorder is "characterized by the unpredictable fluctuation of [its] symptoms, and thus it is not surprising that even a highly unstable patient will have good days or possibly good months." Simon, 7 F.4th at 1106 (citation omitted).

Here, at the request of the ALJ, Dr. Kirkendall examined Plaintiff and authored a report on June 27, 2019. Tr. at 688-93. He also filled out a Medical Source Statement of Ability to Do Work-Related Activities (Mental). Tr. at 694-96. Importantly, Dr. Kirkendall indicated that Plaintiff's records from Plaintiff's treating behavioral healthcare center were available for his review. Tr. at 689.

Relevant to the parties' arguments, Dr. Kirkendall opined Plaintiff is markedly limited in the following areas: ability to appropriately deal with stress, Tr. at 693; interact appropriately with the public, with supervisors, and with co-workers; and respond appropriately to usual work situations and to changes in a routine work setting, Tr. at 695. Dr. Kirkendall wrote that Plaintiff presented "with significant mood dysregulation difficulties"; is "easily overwhelmed"; and Plaintiff's "anxiety and depression [are] likely to interfere w/his ability to interact w/others." Tr. at 695. Dr. Kirkendall also noted Plaintiff was "prescribed a significant amount of medication that also may be causing cognitive slowing," Tr. at 694, and there were "attention and concentration difficulties noted." Tr. at 695; see also Tr. at 690.

The ALJ, in assigning only "partial weight" to Dr. Kirkendall's report and diagnosis and "limited weight" to Dr. Kirkendall's opinions on the Medical Source Statement, stated that she believed the "objective findings support unskilled work" and that "[t]he record, which shows [Plaintiff] is stable on his

- 12 -

medications, does not support marked limitations." Tr. at 25. The ALJ opined that any limitations Plaintiff has in the areas of stress and pace were appropriately accounted for in the assigned RFC. Tr. at 25.

The ALJ erred in evaluating Dr. Kirkendall's opinions in the report and on the Medical Source Statement. To the extent the ALJ relied on unspecified "objective findings support[ing] unskilled work," Tr. at 25. the undersigned cannot determine the objective findings to which she referred, see Simon, 7 F.4th at 1109 ("[a]s for the 'other clinical findings' that the ALJ found to be inconsistent with [a consultative mental examiner's] opinions, we cannot say with any certainty what those findings were because the ALJ's decision did not list them"). In fact, many of the objective findings Dr. Kirkendall made—some even recognized by the ALJ—seem to support his opinions. See Tr. at 25 (ALJ recognizing findings that Plaintiff appeared to be heavily medicated, arms and legs frequently shaking, affect anxious). Plaintiff's medical records, particularly from the behavioral healthcare center, also contain objective findings that in the undersigned's view support Dr. Kirkendall's assignment of marked limitations in various areas. See generally Tr. at 459-686.

The ALJ also relied on Plaintiff's stability on medication in discounting Dr. Kirkendall's opinions. Tr. at 25. The record no doubt contains evidence of Plaintiff being stable on medication from his treating psychiatrist. See Tr. at 385 (April 6, 2016), 387 (March 11, 2016), 389 (February 12, 2016), 391

(January 15, 2016), 393 (December 18, 2015), 395 (November 20, 2015), 397 (October 23, 2015), 400 (September 25, 2015), 402 (August 28, 2015), 404 (July 31, 2015), 406 (July 3, 2015), 408 (June 5, 2015), 410 (May 1, 2015), 412 (April 3, 2015), 414 (March 6, 2015), 416 (February 6, 2015), 418 (January 9, 2015), 420 (December 9, 2014), 423 (October 23, 2014), 425 (October 8, 2014), 427 (September 10, 2014), 429 (August 13, 2014), 431 (July 16, 2014), 433 (June 18, 2014), 437 (May 21, 2014), 439 (April 23, 2014), 441 (March 26, 2014), 446 (January 29, 2014), 448 (January 2, 2014), 451 (December 5, 2013); but see Tr. at 444 (February 26, 2014-"fair" response to medications).

The notes from the behavioral healthcare center are not as convincing, although a number of entries note Plaintiff as being "moderately stable on present meds,"[12] Tr. at 491, 500, 504, 521, 525, 529, 533, 537, 540, 544, 548, 570, 574, 578, or "generally," "presently," and "more" stable on his medications, Tr. at 642, 646, 650, 663, 667, 671, 675, 682, 686. These notes on the whole describe an individual who has significant symptoms and issues from bipolar disorder and anxiety despite compliance with medication. See, e.g., Tr. at 678 (December 5, 2018 note stating Plaintiff was "improving on his current medication"), 654 (March 28, 2018 note stating Plaintiff reported some sort of seizure-like episode), 658-59 (February 21, 2018 note stating Plaintiff was

---

[12] The administrative transcript contains duplicates of some of the notes from the behavioral center. Some of the citations are to duplicates.

"slightly improved on present meds," "stable," and had "3 good days per month"), 554 (January 24, 2018 note stating Plaintiff was "moderately anxious on present meds"), 558-59, 562-63 (December 27, 2017 and November 29, 2017 notes stating Plaintiff was "moderately depressed on present meds"), 566-67 (November 1, 2017 note stating Plaintiff was had "increase in anxiety and depression on present meds"), 525-26 (June 13, 2017 note stating Plaintiff received a service dog and "continue[d] to have a low level of depression & constant anxiety in spite of his numerous present medications"), 495 (December 9, 2016 note stating Plaintiff's "biggest problem is feeling very anxious when he is away from the home," noting multiple prescriptions over the past year, as well as therapy, and indicating "[a]ll of these treatments do not seem to have helped significantly with his anxiety"), 508-09 (July 21, 2016 note stating Plaintiff was sleeping better since starting a new medication but anxiety and depression were unimproved), 459-60, 512-13 (June 16, 2016 note stating that although Plaintiff was not suicidal, he did "not feel significantly better in any other way" despite being compliant with medications but also drinking alcohol), 463-64, 516-17 (June 2, 2016 note stating Plaintiff was "worried & depressed all of the time & [was] fearful about leaving the house"), 467, 472-73, 611 (June 1, 2016 note stating Plaintiff had trouble sleeping, very poor appetite, fear of leaving the house, daily thoughts about suicide) 479, 620 (February 9, 2016 note stating Plaintiff had a poor appetite and had lost 12 pounds in 2 months, racing

thoughts, and poor impulse control), 482, 488 (December 31, 2015 note stating Plaintiff had racing thoughts, restlessness, poor concentration, and poor impulse control).

The ALJ's finding that Plaintiff was stable on medication, alone, does not adequately explain why Dr. Kirkendall's assignment of marked limitations in numerous areas of <u>functioning</u> was rejected. <u>See</u> <u>Simon</u>, 7 F.4th at 1106 (noting that "the opinion evidence [of a treating psychiatrist] diagnose[d the claimant] with a severe combination of bipolar disorder, depression, and anxiety, accompanied by symptoms considerably more serious than those acknowledged by the ALJ"). Nor does the ALJ's reliance on Plaintiff's stability on medication adequately explain the apparent rejection of Dr. Kirkendall's observation about Plaintiff being "prescribed a significant amount of medication that may also be causing cognitive slowing" and opinion that Plaintiff has "attention and concentration difficulties." Tr. at 694, 695. In other words, even if Plaintiff is stable on medication as the ALJ found, Dr. Kirkendall's opinion about the cognitive effects of the medication was not addressed by the ALJ in discounting the opinion.[13]

---

[13] The ALJ did address alleged side effects later in the Decision, finding that Plaintiff's allegation of various side effects was inconsistent with his reporting to providers. Tr. at 26. Dr. Kirkendall's observation about the effects of the medication had to do more with Plaintiff's cognitive functioning than with side effects generally.

- 16 -

For all of the foregoing reasons, the ALJ erred in evaluating Dr. Kirkendall's opinion, and remand is required. On remand, the ALJ shall re-evaluate the opinion. If appropriate, the ALJ shall also reconsider the step three findings regarding whether Plaintiff meets or medically equals a listing, and Plaintiff's other arguments in this appeal.

## V. Conclusion

Based on the foregoing, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

    (A) Re-evaluate Dr. Kirkendall's opinion;

    (B) Reconsider the step three findings and Plaintiff's other arguments on appeal as appropriate; and

    (C) Take such other action as may be necessary to resolve this matter properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set

forth by the Standing Order on Management of Social Security Cases entered on December 7, 2021 in Case No. 3:21-mc-001-TJC (Doc. No. 43, ¶¶ 6, 8).

**DONE AND ORDERED** in Jacksonville, Florida on February 23, 2022.

*[signature]*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record